**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**February 16, 2023**

_____

**Christopher M. Wolpert**
**Clerk of Court**

STACY WILLIS, as personal
representative of the Estate of Mitchell
Everett Willis, deceased,

    Plaintiff - Appellee,

v.

JOHNATHON JOHNSON, individually;
JAMES NEWKIRK, individually,

    Defendants - Appellants,

and

OKLAHOMA COUNTY DETENTION
CENTER; BOARD OF COUNTY
COMMISSIONERS OF OKLAHOMA
COUNTY, OKLAHOMA; P. D.
TAYLOR, Oklahoma County Sheriff,
individually and in his official capacity;
OKLAHOMA COUNTY SHERIFF'S
DEPARTMENT; JOHN WHETSEL,
individually; KODY WARD, individually;
TIFFANY WILLIAMSON,

    Defendants.

No. 22-6039
(D.C. No. 5:18-CV-00323-D)
(W.D. Okla.)

_____

**ORDER**[*]

_____

[*] This order is not binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **HOLMES**, Chief Judge, **TYMKOVICH**, and **CARSON**, Circuit Judges.

_____

A district court's qualified immunity ruling provides a limited exception to our general rule that a party may not appeal summary judgment denials. But our appellate jurisdiction depends on the appellant accepting the district court's factual findings for purposes of the appeal.

Defendants Johnathon Johnson and James Newkirk appeal the district court's summary judgment order denying them qualified immunity. In their briefing and at oral argument, Defendants argued their version of the facts. At its core, their argument challenges the district court's conclusion that Plaintiff Stacy Willis presented sufficient evidence to survive summary judgment. We thus dismiss their interlocutory appeal for lack of appellate jurisdiction.

## I.

We take the following facts from the district court's opinion because we limit our qualified immunity review to considering "whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right." Attocknie v. Smith, 798 F.3d 1252, 1256 (10th Cir. 2015) (quoting Morris v. Noe, 672 F.3d 1185, 1189 (10th Cir. 2012)). We do not consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove. Id.

Law enforcement officers arrested Mitchell Willis for public drunkenness and disorderly conduct. Early in his detention, Willis started a physical altercation

outside a receiving cell while officers tried to serve him lunch. Several officers had to intervene to subdue him. Officers placed him in handcuffs and ankle shackles. Detention center medical staff cleared him to go to a cell. He walked there under his own power.

Three officers, including Defendant Johnson, escorted Willis to his cell. Once inside the cell, they ordered Willis to lower himself to his knees. Willis complied. Johnson then assisted him to his stomach. At this point, Willis was face down in a prone position restrained by handcuffs and ankle shackles. The officers surrounded him to remove the handcuffs and shackles. To keep Willis on the floor Johnson used a three-point stabilization technique, which involves an officer placing his foot on the floor between a detainee's neck and shoulder and lowering his shin across a detainee's shoulder blade. During the uncuffing, another officer thought Johnson's knee was in an incorrect position on Willis's back and directed Johnson to reposition his knee. The officers removed the restraints and exited the cell.

Over the next six hours, officers conducted sight checks every fifteen minutes. The detention center assigned Defendant Newkirk to perform them. He began just as Johnson left the floor. When performing sight checks, the Oklahoma County Sheriff's Office trained officers to look for movement in the cell and other signs of life. Officers were then to document in a logsheet what the inmate was doing during each check.

In his first sight check, Newkirk documented that Willis was awake. Newkirk then went to lunch and another officer completed sight checks in his absence. He

3

documented that Willis was "laying." His next two entries record Willis as "sitting." That officer told investigators that Willis was seated on the floor with his back and shoulders against the wall. Upon his return from lunch, Newkirk resumed the sight checks. He initially told investigators that Willis appeared to be lying on his stomach in the same position as when he left for lunch. At his deposition, Newkirk testified that Willis had moved closer to the door and was lying on his back.

Video shows Newkirk completing his checks. For one sight check, he appears to look inside the cell three separate times. Several times, he kicked or knocked the cell door. He explained he would do this when a detainee appeared to be sleeping to get some sort of movement or reaction. Newkirk explained that if a kick or knock did not evoke a reaction, an officer should then call for a nurse and a gurney. Newkirk told an investigator that Willis did not respond to the knocks or kicks. He also told the investigator that it was difficult to determine whether Willis was breathing.

Two hours after returning from lunch, Newkirk asked two others to look at Willis. One officer testified that Newkirk asked her to look at Willis's position because he had been lying "in the same weird position." The other officer looked in the cell and walked off without checking to see if Willis was breathing. Neither officer gave a definitive answer as to Willis's condition.

Three hours later, a detention center nurse arrived to dispense medication to a different inmate on the same floor. Newkirk told the nurse that he had been concerned about Willis for some time. The nurse found Willis unresponsive and told

4

Newkirk to call for a gurney.  Detention center staff tried to resuscitate Willis but failed.  Newkirk's last seventeen sight check entries said "sleep."

The medical examiner concluded that Willis's cause of death was blunt force trauma to his thoracic spine.  An autopsy revealed a significant injury to Willis's back.  His spine was separated between the fifth and sixth thoracic vertebrae, which is about halfway from the top and bottom of the spine.  His spinal cord was almost completely transected.

After Willis's death, his estate sued Defendants under 42 U.S.C. § 1983 for violating his constitutional rights.  Plaintiff alleged that Defendant Johnson used excessive force during the removal of Willis's handcuffs and that Defendant Newkirk showed deliberate indifference to his medical needs in the hours that followed.  Defendants filed motions for summary judgment.  In separate orders, the district court denied them.

As to Defendant Johnson, the district court denied summary judgment because a review of the evidence in the light most favorable to Plaintiff revealed a fact question existed as to whether Johnson acted reasonably.  The district court first concluded that Plaintiff produced legally sufficient evidence showing that a reasonable detention officer would have known that placing excessive pressure on Willis's spine as he lay on his stomach created a significant risk of spinal injury, which could lead to paralysis or death.  In doing so, the district court pointed to evidence that the three-point restraint was not a necessary use of force.  Plaintiff's correctional expert opined that the three-point technique is used for stabilizing a

detainee during cuffing, not uncuffing. That report also cited testimony from the Oklahoma County Detention Center's training director that he did not teach officers to use the three-point stabilization technique while uncuffing a detainee. The district court also concluded that Plaintiff put forth evidence suggesting Johnson was subjectively aware of the risks implicated by use of the three-point stabilization technique at the time of Willis's detention. Finally, the district court found that Plaintiff's evidence could show that Johnson's knee contacted Willis's back with enough force to cause the spinal injuries Willis sustained.

As to Defendant Newkirk, the district court said that the facts taken in a light most favorable to Plaintiff showed Newkirk subjectively perceived Willis's need for medical care, that Newkirk knew an excessive risk to Willis's health existed, and that Newkirk disregarded that risk. Some of Plaintiff's evidence suggests that Willis did not move positions for nearly six hours during Newkirk's sight checks. He asked three people over that period to look in Willis's cell. He knocked and kicked the cell door several times with no response. Newkirk had training to call for a nurse and gurney when knocking does not evoke a reaction. Yet Newkirk did not call for a gurney until after a nurse directed him to do so nearly three and a half hours after he first kicked the cell door.

Both Defendants appeal their respective summary judgment rulings.

## II.

We "typically do not have jurisdiction to review denials of summary judgment motions." Cox v. Glanz, 800 F.3d 1231, 1242 (10th Cir. 2015) (quoting Serna v.

6

Colo. Dep't of Corr., 455 F.3d 1146, 1150 (10th Cir. 2006)).  But if the denial of

qualified immunity to a public official involves abstract issues of law, the public

official may immediately appeal the denial.  Id. (quoting Fancher v. Barrientos,

723 F.3d 1191, 1198 (10th Cir. 2013)).  When that happens, we have jurisdiction to

review "(1) whether the facts that the district court ruled a reasonable jury could find

would suffice to show a legal violation, or (2) whether that law was clearly

established at the time of the alleged violation."  Id. (quoting Roosevelt-Hennix v.

Prickett, 717 F.3d 751, 753 (10th Cir. 2013)).  "The district court's factual findings

and reasonable assumptions comprise the 'universe of facts upon which we base our

legal review of whether defendants are entitled to qualified immunity.'"  Id. (quoting

Fogarty v. Gallegos, 523 F.3d 1147, 1154 (10th Cir. 2008)).  And when the district

court "concludes that a reasonable jury could find certain specified facts in favor of

the plaintiff, . . . we usually must take them as true—and do so even if our own *de

novo* review of the record might suggest otherwise as a matter of law."  Id. (quoting

Lewis v. Tripp, 604 F.3d 1221, 1225 (10th Cir. 2010)).  Importantly, we lack

jurisdiction to decide whether the pretrial record contains a genuine issue of material

fact for trial.  Id. (citing Johnson v. Jones, 515 U.S. 304, 320 (1995)).

In their opening brief on appeal, Defendants complain that the district court

assumed incorrectly that Johnson applied sufficient pressure to Willis's spine to

significantly injure it.[1]  Without support, Defendants contend that courts should not

---

[1] Again, at oral argument, Defendants continued to challenge the facts as found
by the district court.  For example, Defendants argued that Johnson was following

7

limit themselves to considering facts only in favor of Plaintiff, nor are those the only

facts that courts should consider.  Defendants also argue that the district court failed

to analyze the evidence from the perspective of a reasonable officer in a same or

similar position.  Defendants believe that the district court should have focused on

Willis's earlier combative actions and should have concluded that based on those

actions, it wasn't unreasonable for Johnson to anticipate or to be prepared for Willis

to want to fight after loosening the handcuffs.

Defendants' argument amounts to a backdoor challenge to the district court's

factual analysis.  As they did below, Defendants argue that their evidence establishes

that Willis's uncooperative and combative conduct justified Johnson's use of force.

But the district court held that Plaintiff presented evidence that, if true, would show

Johnson used a technique that he knew was unnecessary to restrain Willis and that a

reasonable officer would have known that technique posed a significant risk of

paralysis and death.  Defendants also continue to argue that Johnson's knee could not

have caused Willis's back injury.  But again, the district court found that Plaintiff put

forth legally sufficient evidence to prove that Johnson's knee contacted Willis's back

with force sufficient to cause the spinal injuries.[2]  Because Defendants chose to

_____

proper technique and denied evidence in the record that suggested that Johnson misapplied the three-point technique.  Defendants did not believe whether he properly applied the three-point technique was a jury question.

[2] At oral argument, when asked about the district court's factual finding that evidence in the record suggested that Johnson's knee contacted Willis's back with force sufficient to cause the spinal injuries Willis sustained, Defendants' attorney stated he didn't believe such evidence existed in the record.

pursue on appeal whether a genuine issue of material fact exists on these issues, we lack jurisdiction to hear the appeal.

Defendants engage in the same flawed argument with Newkirk. They argue that the district court disregarded the intervening actions of other detention officers and medical staff who had observed Willis laying, sitting, and awake while in his cell. They also argue that Plaintiff submitted no evidence to the district court that Willis's medical needs were so obvious that Newkirk was deliberately indifferent to his medical care. Again, these evidentiary arguments fly in the face of the district court's factual conclusion that Plaintiff produced legally sufficient evidence to show Newkirk subjectively perceived and then disregarded a significant risk to Willis's well-being. And again, Defendants' refusal to accept the district court's factual findings is fatal to our appellate jurisdiction.

Ultimately, Defendants' presentation of the case assumes we will be their jury. We cannot do that. Because Defendants chose to grapple with the district court's interpretation of the evidence rather than advance a legal argument, we have no jurisdiction over this interlocutory appeal.

APPEAL DISMISSED.

Entered for the Court

Joel M. Carson III
Circuit Judge